**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

FILED
July 12, 2006

CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| **DEDRA SOUTHARD, individually and as independent administrator of the estate of TROY LEE AYLOR, and DEWAYNE AYLOR,** | § | |
| **Plaintiffs,** | § | **Civil Action No. 7:06-CV-011-R** |
| **vs.** | § | |
| **UNITED REGIONAL HEALTH CARE SYSTEM, INC., d/b/a UNITED REGIONAL HEALTH CARE SYSTEM,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. No. 9). For the reasons explained below, the motion is **DENIED**.

### I. BACKGROUND

On August 29, 2004, Troy Lee Aylor visited the emergency room of the United Regional Health Care System in Wichita Falls, Texas while experiencing what he believed to be a heart attack. Aylor did not have health insurance at the time and was quickly treated and released within a ninety minute period. He suffered a fatal heart attack the next day.

Aylor's surviving children, one of whom is the administrator of his estate, have filed suit against the United Regional Heath Care System ("United Regional") for violating the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. 1395dd *et seq*. (West 2005). Plaintiffs have also asserted pendent survivorship and wrongful death claims against United Regional.

The complaint alleges that Mr. Aylor requested emergency medical care for his chest pains and other symptoms but that United Regional's staff failed to provide him with an appropriate medical screening examination; treated his medical condition differently from other patients who had exhibited the same symptoms due to his uninsured status; and failed to stabilize his condition before discharging him, all of which resulted in his death the next day. Defendant has now moved to dismiss Plaintiffs' EMTALA claim for failure to state a claim upon which relief may be granted.

## II. ANALYSIS

### A. Rule 12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6) is disfavored in the law and rarely granted. *See Thompson v. Goetzmann* 337 F.3d 489, 495 (5th Cir. 2003). When ruling on a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-movant. *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). The complaint will only be dismissed if it appears beyond doubt that the claimant can prove no set of facts in support of its claim that would entitle him or her to relief. *See Campbell*, 43 F.3d at 975; *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). The relevant question is not whether the claimant will prevail but whether it is entitled to offer evidence to support its claims. *See Cross Timbers Concerned Citizens v. Saginaw*, 991 F.Supp. 563, 571 (N.D.Tex. 1997).

In ruling on a Rule 12(b)(6) motion, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). The court may, however, take judicial notice of documents in the public record and may consider them in ruling on the motion.

*R2 Investments LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005) (citing *Lovelace*, 78 F.3d at 1017-18).

**B. Emergency Medical Treatment and Active Labor Act**

The Emergency Medical Treatment and Active Labor Act is a federal law that was enacted in 1986 to prevent "patient dumping" – i.e., the practice of refusing to treat patients who are unable to pay. *Marshall v. East Carroll Parish Hosp. Service Dist*., 134 F.3d 319, 322 (5th Cir. 1998) (collecting cases); *see also*, *Harry v. Marchant*, 291 F.3d 767, 772 (11th Cir.2002) (en banc). The statute creates a cause of action for individuals who are harmed either by a hospital's failure (1) to provide them with "appropriate medical screening" to determine if an emergency medical condition exists or (2) to "stabilize" them before transfer or discharge if a statutorily defined emergency medical condition has been detected. 42 U.S.C. §§1395dd(a)-(c).

What constitutes an "appropriate medical screening examination" is not defined under the statute. However, the Fifth Circuit, following the lead of other circuits, has held that an "'appropriate medical screening' is not judged by its proficiency in accurately diagnosing the patient's illness, but rather by whether it was performed equitably in comparison to other patients with similar symptoms." *Marshall*, 134 F.3d at 322. In this regard, "[a] hospital's liability under EMTALA is not based on whether the physician misdiagnosed the medical condition or failed to adhere to the appropriate standard of care." *Battle ex rel. Battle v. Memorial Hosp. at Gulfport*, 228 F.3d 544, 557 (5th Cir. 2000) (citing *Marshall*, 134 F.3d at 322). Rather, "the plaintiff must show that the hospital treated him differently from other patients with similar symptoms." *Battle*, 228

F.3d at 557.[1] As one appellate court has explained, the issue "is not what deficiencies in the standard of emergency room care contributed to a [patient's] misdiagnosis ... the issue is whether the procedures followed in the emergency room, even if they resulted in a misdiagnosis, *were reasonably calculated to identify the patient's critical medical condition.*" *del Carmen Guadalupe v. Agosto*, 299 F.3d 15, 21 (1st Cir. 2002) (emphasis added); *see also*, *Morgan v. North Mississippi Medical Center*, 403 F.Supp.2d 1115, 1125 (S.D.Ala. 2005) ("EMTALA's screening obligation is focused exclusively on ensuring that a hospital applies the same screening procedures for indigent patients who present at its emergency room that it does for similarly situated patients who have insurance or are otherwise well-heeled.") (citation omitted).

For purposes of the EMTALA, the term "stabilize" means "to provide such medical treatment of the condition as may be necessary to assure with reasonable medical probability that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from the facility." 42 U.S.C. §1395dd(e)(3)(A). The term "transfer" is further defined to include a patient's discharge. *See* 42 U.S.C. §1395dd(e)(4) ("'[T]ransfer' means the movement (including the discharge) of an individual outside a hospital's facilities at the direction of any person employed by (or affiliated or associated, directly or indirectly, with) the hospital..."). Consequently, a plaintiff may state a claim under EMTALA if he or she can show that the hospital "discharge[d] [him] with knowledge of his emergency medical condition and without engaging in such medical

[1] Defendant correctly argues that EMTALA neither establishes a federal medical malpractice cause of action nor a nationalized standard of medical care. *See, e.g., Marshall*, 134 F.3d 322; *Baker v. Adventist Health, Inc.*, 260 F.3d 987, 995 (9th Cir. 2001). For that reason, a hospital does not violate EMTALA by merely failing to detect or misdiagnosing an emergency condition. *See Marshall* 134 F.3d at 332-323; *Baker*, 260 F.3d at 993; *Baber v. Hospital Corp. of America*, 977 F.2d 872, 879-80 (4th Cir.1992) ("Questions regarding whether a physician or other hospital personnel failed properly to diagnose or treat a patient's condition are best resolved under existing and developing state negligence and medical malpractice theories of recovery.").

examination and treatment as may be necessary to assure that no material deterioration of [his] condition [would] likely result from such discharge." *Morgan*, 403 F.Supp.2d at 1127-28.

In their complaint, Plaintiffs allege, among other things, that United Regional's employees knew that Mr. Aylor was uninsured; knew that he was experiencing various symptoms of or precursors to an acute myocardial infarction; knew that he had a past medical history of coronary artery disease; knew that his electrocardiogram was abnormal; and knew that he was presently suffering from coronary artery disease, coronary artherosclerosis, myocardial ischemia, and unstable angina. (*See* Compl. ¶¶19-31). Plaintiffs assert that United Regional's Emergency Department had a policy of performing several specific medical tests and procedures to patients complaining of non-traumatic chest pain, all of which were designed to determine whether an emergency medical condition existed. (*Id.* ¶¶35-56). Plaintiffs allege that United Regional had previously administered these examinations on a routine basis to other emergency room patients who were exhibiting the same chest pain and symptoms that Mr. Aylor was exhibiting, yet the hospital and its employees treated Mr. Aylor differently than those patients by failing to administer the same diagnostic tests to him; by failing to provide him with an otherwise adequate medical screening examinations that were within the hospital's capability; and by discharging him from the hospital without having stabilized his emergency condition, all of which resulted in his untimely death. (Id. ¶¶62-66).

After carefully reviewing the motion, response, and reply, the Court is not convinced that Plaintiffs cannot prove any set of facts that would entitled them to relief against United Regional for violating the Emergency Medical Treatment and Active Labor Act. The allegations in the complaint indicate that the hospital's medical screening examinations were not performed in an equitable manner with respect to Mr. Aylor, who was experiencing the same symptoms as other patients but

who was not provided the same diagnostic procedures, allegedly because of his uninsured status. The complaint further alleges that United Regional failed to stabilize Mr. Aylor's medical condition before discharging him, despite knowing of his condition and that his condition would materially deteriorate if he were released.

To the extent that Defendant argues that these allegations are unsubstantiated and thereby warrant dismissal, *see* Def.'s Mot. Br. at 5, Defendant fails to recognize that a Rule 12(b)(6) motion merely tests the adequacy of the pleadings and not Plaintiffs' ultimate evidentiary burden. If later, after an adequate time for discovery, Plaintiffs fail to substantiate these allegations with admissible evidence, then Defendant would be entitled to summary judgment on their EMTALA claim. At this early stage, however, dismissal would be inappropriate for lack of evidence. Assuming the truth of the allegations, the Court believes that Plaintiffs may be able to prove facts to substantiate their EMTALA claim. Accordingly, the Court denies Defendant's motion to dismiss.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss for failure to state a claim.

**IT IS SO ORDERED.**

**SIGNED: July 12, 2006.**

Jerry Buchmeyer

**JUDGE JERRY BUCHMEYER**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**