IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| **DEDRA SOUTHARD, individually and as independent administrator of the estate of TROY LEE AYLOR, and DeWAYNE AYLOR**, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED REGIONAL HEALTH CARE SYSTEM, INC. d/b/a UNITED REGIONAL HEALTH CARE SYSTEM**, <br><br> Defendant. | § § § § § § § § § Civil Action No. **7:06-CV-0011-L** § § § § § § § |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Motion for Summary Judgment of Defendant United Regional Health Care System, Inc., filed June 6, 2008; and (2) Defendant United Regional Healthcare System, Inc.'s Objections to Magistrate Judge's Order Dated August 5, 2008, filed August 19, 2008. After carefully considering the motion, objections, briefs, record, and applicable law, the court **denies** Motion for Summary Judgment of Defendant United Regional Health Care System, Inc., and **overrules in part** and **sustains in part** Defendant United Regional Healthcare System, Inc.'s Objections to Magistrate Judge's Order Dated August 5, 2008.

### I. Factual and Procedural History

Plaintiffs Dedra Southard, individually and as independent administrator of the estate of Troy Lee Aylor, and DeWayne Aylor ("Plaintiffs") have brought this action against Defendant United Regional Health Care System, Inc. d/b/a United Regional Health Care System ("Defendant" or "URHCS") alleging survival and wrongful death claims for violation of the Emergency Medical

Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA"). Pls.' First Amend. Orig. Compl. ¶¶ 62-66 (hereinafter, "Complaint"). Plaintiffs' claims arise from the death of Troy Lee Aylor one day after he was treated at the URHCS Emergency Department in Wichita Falls, Texas, and later released.

The facts of this case are largely disputed, and the court will set forth only those facts that are not disputed. The parties agree that decedent Troy Lee Aylor ("Aylor") arrived at the URHCS Emergency Department on August 29, 2004, and that he was admitted at 1:11 p.m. He complained of chest pain. At 1:22 p.m. Aylor was seen by Dr. Armando Moreno ("Dr. Moreno"). The parties dispute what the URHCS Emergency Department's standard protocol for evaluating patients was and also the extent of the examination provided by Dr. Moreno. They do agree that Dr. Moreno ordered an electrocardiogram, an x-ray, and lab work for Aylor, but they disagree as to the nature of the physical examination and history taken by Dr. Moreno as well as whether Aylor stated that he currently was experiencing chest pain while he was in the Emergency Department. Aylor was discharged by the URHCS Emergency Department, and the medical records state that his "symptoms resolved." The next day, Aylor was found passed out in his truck. He was transported by helicopter to the URHCS Emergency Department, admitted at 8:47 a.m., examined at 8:50 a.m., and pronounced dead at 9:05 a.m.

## II. Motion for Summary Judgment

### A. Legal Standard – Motion for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909,

915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### B.     Legal Standards – EMTALA

EMTALA was passed by Congress "to prevent 'patient dumping,' which is the practice of refusing to treat patients who are unable to pay." *Marshall v. East Carroll Parish Hosp.*, 134 F.3d 319, 322 (5th Cir. 1998). The statute requires:

> In the case of a hospital that has a hospital emergency department, if any individual . . . comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition . . . exists.

42 U.S.C. § 1395dd(a). "A hospital's liability under EMTALA is not based on whether the physician misdiagnosed the medical condition or failed to adhere to the appropriate standard of care. Instead, the plaintiff must show that the hospital treated him differently from other patients with similar symptoms." *Battle v. Memorial Hosp. at Gulfport*, 228 F.3d 544, 557 (5th Cir. 2000) (citation omitted). The statute "was not intended to be used as a federal malpractice statute . . . . [A]n 'appropriate medical screening examination' is not judged by its proficiency in diagnosing the patient's illness, but rather by whether it was performed equitably in comparison to other patients

**Memorandum Opinion and Order – Page 4**

with similar symptoms." *Marshall*, 134 F.3d at 322 (citation omitted). The burden is on the plaintiff to show that the hospital treated the patient differently from patients with similar symptoms. *Id*. at 323-24.

If the hospital determines that the patient has an emergency medical condition, it must provide:

>    (A)    within the staff and facilities available at the hospital, for such further medical examination and such treatment as be required to stabilize the medical condition, or
>
>    (B)    for transfer of the individual to another medical facility . . . .

42 U.S.C. § 1395dd(b)(1). "The duty to stabilize does not arise unless the hospital has actual knowledge that the patient has an unstabilized medical emergency." *Battle*, 228 F.3d at 558 (citation omitted).

### C.    Parties' Contentions

Defendant URHCS has moved for summary judgment of Plaintiffs' claims against it. The hospital argues that it has a uniform EMTALA protocol that it properly followed with respect to Aylor. It further argues that Dr. Moreno's examination of Aylor satisfied EMTALA. Dr. Moreno testified that he gave Aylor the same routine examination that he would provide for any other patient, and the hospital contends that the physician properly engaged in a differential diagnosis, concluded that Aylor was suffering from stable angina, and sent him home in a stable condition. The hospital asserts that Plaintiffs' claims are truly medical malpractice claims, not an EMTALA claim. Finally, the hospital argues that URHCS had no obligation to stabilize Aylor because it did not have any knowledge that he suffered from an emergency medical condition.

Plaintiffs respond that URHCS's position that Aylor was given a screening examination complies with EMTALA is an incorrect understanding of the statute. They argue that the details and quality of the examination are relevant in determining whether EMTALA has been violated. They also point to the hospital's Chest Pain Protocol and argue that patients with symptoms similar to Aylor's were treated pursuant to this protocol. They further contend that Dr. Moreno's history and physical examination were inadequate, that he failed to provide additional screening tests that were routinely given to patients who had "current chest pain," that Dr. Moreno admitted that he violated his own routine screening examination protocol by failing to consult a cardiologist, and that charts of patients with similar symptoms establish differential treatment. Finally, Plaintiffs contend that the hospital had a duty to stabilize Aylor because it knew that he was suffering from an emergency medical condition.

D. Analysis

The court has reviewed the briefing, evidence, and arguments of the parties and concludes that there are fact issues that preclude a determination that Defendant is entitled to summary judgment on Plaintiffs' claims. The parties dispute whether Aylor was experiencing "current chest pain" while he was in the emergency department. Plaintiffs argue that Dr. Moreno's testimony that Aylor's chest pain had resolved is in conflict with the emergency department records that state he had "current chest pain," and the testimony of Plaintiff Southard, who was present during Aylor's first visit. Dr. Moreno admitted that for a patient with "current chest pain," he would order additional tests and consult with a cardiologist before discharging a patient. The testimony of Dr. Moreno and Southard also differed with respect to the physician's examination of Aylor and the information Aylor gave to Dr. Moreno during his history and physical.

These disputes preclude summary judgment, and the court rejects Defendant's contention that proof that Aylor received a screening examination is sufficient to comply with EMTALA. The case law construing the statute requires that a plaintiff show that the hospital treated him differently than patients with similar symptoms. *Battle*, 228 F.3d at 557; *Marshall*, 134 F.3d at 322. Dr. Moreno admits that his typical screening examination for patients experiencing "current chest pain" is different from the examination provided to Aylor. Plaintiffs have also provided some evidence of other patients with similar symptoms receiving additional cardiac enzyme tests and consultations with cardiologists.

Whether this evidence is sufficient to prove Plaintiffs' case is not the question before the court. There is a question of fact with respect to what symptoms Aylor communicated to Dr. Moreno. If a jury determines that Aylor did express that he continued to experience chest pain while in the emergency department, there is some evidence that supports Plaintiffs' claim that Aylor was treated differently than patients with similar symptoms. Accordingly, there is a genuine issue of material fact with respect to Plaintiffs' EMTALA claims, and therefore Defendant is not entitled to judgment as a matter of law. The court therefore **denies** Motion for Summary Judgment of Defendant United Regional Health Care System, Inc.

### III. Appeal of Magistrate Judge's Order Regarding Experts

Defendant URHCS also objects to the magistrate judge's August 5, 2008 order granting in part and denying in part Plaintiffs' Objections and Motion to Strike Regarding Defendant's Experts Paul K. Bronston, M.D., and Hugh H. West, M.D. The magistrate judge granted the motion to strike in part and held that Defendant's experts could not testify to their ultimate opinions regarding whether EMTALA was violated in this case. The magistrate judge denied the motion to the extent

Plaintiffs sought to preclude Defendant's expert testimony regarding disparate treatment. A district court may modify or set aside a magistrate judge's ruling regarding nondispositive pretrial motions only if the ruling is "clearly erroneous or contrary to law." *See* Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [nondispositive] pretrial matter . . . where it has been shown that the magistrate's order is clearly erroneous or contrary to law."); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995).

URHCS argues that the magistrate's order is incorrect because it inaccurately characterizes the expert reports. It further argues that the order is based on a determination that the reports are defective because they fail to expressly disclose the experts' awareness of certain facts. Finally, it argues that the order impermissibly excludes the opinion that the examination provided to Aylor was sufficient to detect the alleged emergency medical condition. Defendant asks the court to modify the magistrate judge's order to exclude only statements regarding the hospital's full compliance with EMTALA but to allow testimony regarding whether URHCS complied with EMTALA, whether URHCS followed its own EMTALA screening procedures, and whether the examination of Aylor was sufficient to determine the existence of his alleged emergency medical condition. Plaintiffs respond that the magistrate judge's order was correct, that each of Defendant's objections should be overruled, that Defendant's expert reports are based on inaccurate facts, and that whether the examination was sufficient to determine the existence of his alleged emergency medical condition is irrelevant.

The court has reviewed the parties' briefing, the expert reports, the magistrate judge's order, and the applicable law and determines that the magistrate judge's legal conclusions in part are contrary to law. Accordingly, Defendant's objections should be, and are hereby, **overruled in part**

and **sustained in part** as herein set forth. The court determines, consistent with its ruling on the motion for summary judgment, that fact questions must be resolved to determine whether the examination provided by Dr. Moreno complies with the standard set forth by EMTALA and subsequent case authority. Defendant's experts cannot opine on the ultimate legal questions, and therefore its request to have its experts testify regarding EMTALA compliance by URHCS must be overruled. The court also will not permit Defendant's experts to testify whether URHCS violated EMTALA or whether it has fully complied with the statute. These are legal conclusions and are outside the scope of expert testimony. The court is concerned about undue prejudice if such testimony is allowed before the jury.

With respect to the other categories of testimony – whether URHCS followed its own EMTALA screening procedures and whether the examination Aylor received was sufficient to determine the existence of his alleged emergency medical condition – the court determines that Defendant's objections should be sustained and the court will allow expert testimony on these subjects, assuming that the proper predicate is laid. While Plaintiffs argue that the magistrate judge was correct in excluding this testimony, the court concludes that Plaintiffs will have an opportunity to vigorously cross-examine the experts and question the experts on the basis of their opinions. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). Given the fact questions that remain in this case, the court determines that expert testimony on these subjects, with a sufficient predicate, may be relevant, and Plaintiffs will have an opportunity to question Defendant's experts on cross-examination.

For the reasons stated, the court **overrules** Defendant's request to allow its experts to testify whether URHCS violated EMTALA or whether it has fully complied with the statute. The court **sustains** Defendant's other objections and will allow Defendant's experts to testify, if the proper predicate is laid, whether URHCS followed its own EMTALA screening procedures and whether the examination Aylor received was sufficient to determine the existence of his alleged emergency medical condition.

**IV. Conclusion**

For the reasons set forth herein, the court determines that there are genuine issues of material fact with respect to Plaintiffs' EMTALA claims, and therefore Defendant is not entitled to judgment as a matter of law. The court therefore **denies** Motion for Summary Judgment of Defendant United Regional Health Care System, Inc. The court also **overrules in part** and **sustains in part** Defendant United Regional Healthcare System, Inc.'s Objections to Magistrate Judge's Order Dated August 5, 2008, as set forth in this memorandum opinion and order.

**It is so ordered** this 25th day of November, 2008.

Sam A. Lindsay
United States District Judge